1
2
3                      UNITED STATES DISTRICT COURT
4                    NORTHERN DISTRICT OF CALIFORNIA
5

6    TA SETI,                              Case No. 22-cv-01089-JSC

7                 Plaintiff,               **ORDER DENYING MOTION
                                           SUMMARY JUDGMENT; STAYING**
8         v.                               **AND REFERRING CASE TO PRO SE
                                           MEDIATION PROGRAM**
9    JIM ROBERTSON, et al.,
                                           Re: Dkt. No. 34
10                Defendants.

11                             **INTRODUCTION**

12        Plaintiff, a California prisoner proceeding without representation by a lawyer, filed this

13   civil rights action under 42 U.S.C. § 1983 against Jim Robertson, the Warden for Pelican Bay

14   State Prison ("PBSP"), and Kathleen Allison, the Secretary for the California Department of

15   Corrections and Rehabilitation ("CDCR").  Plaintiff alleges eight violations of his constitutional

16   rights.

17        United States Magistrate Judge Hixson found the complaint, when liberally construed,

18   stated cognizable claims for relief under the Eighth and Fourteenth Amendments.  Defendants

19   declined to proceed before a magistrate judge, and this action was reassigned to the undersigned.

20   Defendants' motion for partial dismissal under Rule 12(b)(6) of the Federal Rules of Civil

21   Procedure was granted.  (ECF No. 26.)   Plaintiff's fifth claim that his right to equal protection

22   was violated (*see* ECF No. 5 at 11 (the "fifth violation"), and his eighth claim that prison

23   regulations governing clothing and laundry violated his Eighth Amendment rights (*see id*. at 11-12

24   (the "eighth violation")) were dismissed.  Plaintiff's other six claims remain, and these claims

25   assert violations of his Eighth Amendment rights.  (*See id*. at 3-11 (listing violations 1-4 and 6-7).)

26   In addition, all claims against Defendant Allison have been dismissed, and the remaining claims

27   are only against Defendant Robertson.

28        Defendant Robertson moves for summary judgment on the grounds Plaintiff did not

United States District Court
Northern District of California

1    exhaust his available administrative remedies.  Plaintiff filed an opposition, and Defendants filed a

2    reply brief.  For the reasons discussed below, the motion for summary judgment is DENIED.  The

3    case is referred to the Court's Prisoner Mediation Program and STAYED for the duration of the

4    mediation proceedings except as provided below.

5                                        **FACTUAL BACKGROUND**

6           Plaintiff's remaining claims are that PBSP officials violated his Eighth Amendment rights

7    by failing to provide adequate showers, meals, laundry, exercise, and toilet access.  (ECF No. 5 at

8    3-11.)  He further asserts these practices did not comply with various prison regulations.  (*Id.* at

9    13-14.)  Specifically, he alleges:

10          1.  He had to wait more than 48 hours between showers at least once a week between

11              January 3, 2020, when he arrived at PBSP,[1] and the writing of his complaint, dated

12              February 16, 2022.  (ECF No. 5 at 3 ¶ 12; 18.)  California prison regulations

13              provide for showers every other day.  (*Id.* at 13 ¶ 81 (citing 15 Cal. Code Regs.

14              1266).)

15          2.  On approximately 57 occasions between August 9, 2021, and December 30, 2021,

16              PBSP did not provide him meals that complied with the National Academy of

17              Science's recommended dietary allowance and intakes (ECF No. 5 at 3-10 ¶¶ 14-

18              70), as required by prison regulations (*id.* at 13 ¶ 83 (citing 15 Cal. Code Regs. §

19              3050);

20          3.  Plaintiff did not receive any time out of his cell during the following time periods:

21              8/1/21-8/23/21; 10/7/21-10/25/21; 10/27/21-11/6/21; 11/28/21-11/30/21; 12/2/21-

22              12/4/21; 12/19/21-12/25/21; 1/3/22-1/24/22; 2/6/22-2/8/22; and 2/11/22-2/27/22.

23              (ECF No. 5 at 10-11 ¶¶ 71-72.)  The regulations provide for a minimum of three

24              hours per week of exercise out of the cell, and no more than ten consecutive days

25              without exercise.  (*Id.* at 13 ¶ 82, 14 ¶ 86 (citing 15 Cal. Code Regs. §§ 1065,

26              3322.)

27

28   [1] Plaintiff also alleges he was placed in PBSP's "B Yard" on January 28, 2021.  (ECF No. 5 at 2 ¶
     11.)

United States District Court
Northern District of California

4.  On unspecified dates, he did not have access to bathrooms during exercise "hours" because the toilets on the exercise and recreation yard were welded shut. (ECF No. 5 at 11 ⁋ 73);

5.  PSBP did not conduct the once-a-week laundry exchange for four consecutive weeks from the second week of August 2021 to the first week of September 2021, and then again for the last week of November 2021.  (*Id.* at 11 ⁋ 74, 14 ⁋ 84 (citing 15 Cal. Code Regs. § 3031).)[2]

6.  On unspecified dates, PBSP only allowed two to three toilet flushes every one to two hours, which exposed Plaintiff to waterborne disease.  (ECF No. 5 at 11 ¶ 75.).

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to administratively grieve and appeal any "policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." 15 Cal. Code Regs. § 3481(a).  There are two levels of review for inmate non-health-care appeals.  At the first level, the inmate submits a grievance on form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed.  *See id.* at § 3482(a),(c).  The inmate must file this grievance within 60 days of discovering the adverse action.  *Id.* at § 3482(b)(1).  "In response, a claimant shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim."  *Id.* at § 3481(a), 3484.  At the second level, an inmate dissatisfied with the Institutional Office of Grievances' decision at first level, submits a form CDCR 602-2 to the CDCR's Office of Appeals in Sacramento ("OOA") describing "in detail why the decision provided by the Institutional or Regional Office of Grievances is inadequate."  *Id.* at §§ 3481(a), 3484(a),(c).  The inmate has 60 days to file the appeal.  *Id.* at § 3484(b).  In response, "a claimant shall receive a written decision" from the OOA "clearly explaining the

---

[2] As explained in the order granting the motion to dismiss, in this "violation," Plaintiff argues PBSP breached the laundry regulations of the California Department of Corrections and Rehabilitation ("CDCR").  (ECF No. 26 at 2, 8.)  Plaintiff's "eighth violation," which was dismissed, claims the CDCR regulations themselves were unconstitutional.  (*Id.*)

United States District Court
Northern District of California

1   reasoning for the decision in each claim." *Id*. at § 3481(a), 3485.  The OOA has 60 days to

2   provide a written response.  *Id*. at § 3485(g).  An OOA decision of "denied," "granted," "no

3   jurisdiction," "identified as staff misconduct," "pending legal matter," or "time

4   expired" constitutes exhaustion of available administrative CDCR remedies.  *Id*. at § 3485(k)(1).

5          Defendant submits the declaration of M. Russell, a Grievance Coordinator at PBSP, who

6   attests that the database of the PBSP Office of Grievances ("OOG") shows Plaintiff filed two

7   administrative grievances about the conditions alleged in his complaint: log number 205741 filed

8   on January 3, 2022, and log number 246480 filed on April 18, 2022.  (ECF No. 34-3 at 4, 18.)

9   Plaintiff submits records of five additional OOG grievances filed in April and May 2022 and their

10  corresponding decisions.  (ECF No. 37 at 8-35.)  All five grievances were filed after Plaintiff

11  initiated this lawsuit in March 2022.  Three of these grievances (247143 and 247109 filed on April

12  19, 2022, and 251643 filed on May 1, 2022) complain about violations of prison regulations

13  alleged in the complaint, including inadequate laundry and exercise.  (*Id*. at 8-9, 29-30, 34-35).[3]

14  The two additional grievances submitted (247141 filed on April 19, 2022, and 248423 filed on

15  April 22, 2022) complain about incidents not alleged in the complaint; the grievances complain

16  about insufficient showers in April 2022, whereas the insufficient showers alleged in the

17  complaint occurred in 2021.  (*Id*. at 10-12, 17-20; *compare* ECF No. 5 at 3).

18         The OOG "granted" grievance numbers 247141, 247143, and 248423; "granted" in part

19  and "redirected" in part grievance 205471; "granted" in part, "rejected" in part, and "denied" in

20  part grievance 246480; "granted" in part and "rejected" in part grievance 251643; and "denied"

21  grievance 247109.  (*Id*. at 8-11, 13-14, 17-18, 21-24, 27-28, 30-33).  All of these decisions

22  concluded with the following advisement: "[I]f you are dissatisfied with this response you may

23  appeal this decision by mailing the CDCR form 602-2 included in this response to the California

24  Department of Corrections and Rehabilitation, Office of Appeals."  (*Id*.)

25         Russell and the Associate Director of the OOA, Howard E. Mosely, testify in their

26  declarations that searches of their records show Plaintiff never submitted an appeal to the OOA.

27  _____

28  [3]In his reply, Defendant does not dispute the records of these grievances or explain why they did
    not turn up in Russell's database search.  (ECF No. 38.).

4

1    (ECF Nos. 34-1 at 5:16-17, 6:1-2; 34-2 at 3:19-21.)  Plaintiff states in his verified opposition[4] that

2    he mailed appeals of all seven of the grievances described above to the OOA using "indigent

3    envelopes" and "presumably" the United States Postal Service.  (ECF No. 37 at 2-3.)  Plaintiff

4    also submits an acknowledgement of receipt from the OOA of the appeal of grievance 247109.

5    (ECF No. 37 at 39.)  Plaintiff also attaches a sworn statement by two other inmates stating they

6    "have always had problems" with sending indigent envelopes to the OOA because they

7    "sometimes don't git [sic] there" and prison officials "allmost allways [sic] attempt to thwart"

8    them.  (*Id.* at 5.)  Plaintiff represents he has experienced other instances in which PBSP officials

9    have not properly handled his mail, including a letter he mailed to Defendant Allison that she

10   never received.  (*Id.* at 3; ECF No. 5 at 12.)

**DISCUSSION**

11

12       I.       Standard of Review

13       Summary judgment is proper where the pleadings, discovery and affidavits show there is

14   "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

15   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of

16   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

17   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

18   nonmoving party.  *Id.*

19       The party moving for summary judgment bears the initial burden of identifying those

20   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

21   issue of material fact.  *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving

22   party has met this burden of production, the nonmoving party must go beyond the pleadings and,

23   by its own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial.

24

25   _____

26   [4] Because the opposition is verified (ECF No. 37 at 6), the Court treats it as an opposing affidavit
     under Rule 56 to the extent it is based on personal knowledge and sets forth specific facts
     admissible in evidence.  *Cf.  Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995)

27   (treating plaintiff's verified complaint as opposing affidavit to the extent the allegations were
     based on his personal knowledge); *Johnson v. Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998)

28   (holding that a verified motion, like a verified complaint, functions as an affidavit).

United States District Court
Northern District of California

*Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014). If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Exhaustion must ordinarily be decided by a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

II.    Analysis

Defendant argues Plaintiff has not exhausted his claims because he did not pursue them to the OOA before filing this case. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The PLRA required Plaintiff to exhaust his administrative remedies before he filed his complaint. *See McKinney v. Carey*, 311 F.3d 1198, 1199-2000 (9th Cir. 2002). But "a prisoner can cure [exhaustion] deficiencies through later filings, regardless of when he filed the original action" because "[e]xhaustion requirements apply based on when a plaintiff files the operative complaint." *Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022) (citations and internal quotation marks omitted). Here, the operative complaint is the original complaint, which was filed on

6

1   March 4, 2022.[5]  (ECF No. 5.)   The only grievance pertaining to Plaintiff's claims filed prior to

2   the complaint is grievance 205741, which was filed on January 3, 2022; the remaining grievances

3   related to the complaint were filed in April and May 2022.  Therefore, to satisfy the exhaustion

4   requirement, Plaintiff had to properly exhaust his available administrative remedies with grievance

5   205471.

6        Defendant contends Plaintiff did not pursue grievance 205471 (or indeed any of his

7   subsequent grievances[6]) to the final level of administrative review by the OOA.  Plaintiff makes

8   two arguments in response: (1) he did not need to appeal to the OOA because it was granted by the

9   OOG, and (2) he did, in any event, mail the appeal to the OOA, but the OOA never acknowledged

10  its receipt.  (ECF No. 37.)

11       **A.    Exhaustion is not Excused**

12       Plaintiff's first argument is not persuasive.  The OOG decision, dated February 18, 2022,

13  split grievance 205471 into two claims: claim one included Plaintiff's complaints about exercise

14  time, laundry, showers, and toilet access, and claim two concerned his complaint about receiving

15  less than 2000 calories per day of food.  (*Id.* at 13-16.)  Plaintiff's grievance did not identify what

16  relief he sought.  (*Id.* at 15-16.)  The OOG "redirected" the first claim to "appropriate staff" for

17  review.  (*Id.* at 13.)  A staff member investigated the issues, discussed with Plaintiff his findings,

18  including modifications that had to be made due to the COVID-19 pandemic, and concluded

19  Plaintiff's issues were resolved.  (ECF No. 34-3 at 72.)  As to the second claim, the OOG decision

20  stated that inmates are in fact being provided 2,500 to 3,000 calories per day of food that meets the

21  nutritional standards required by the regulations, and that such practices would continue; on that

22  basis, the OOG characterized Plaintiff's food claim as "granted."  (ECF No. 37 at 14.)

23       An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies

24

25  [5] Plaintiff's request to amend his complaint was denied because his proposed amended complaint
    included previously-dismissed claims and added new claims that were not capable of judicial
26  determination and review.  (ECF No. 36.)

27  [6] In his motion, Defendant also argues Plaintiff did not pursue grievance 246480 to the OOA, and
    in the reply brief Defendant argues Plaintiff did not pursue the rest of the grievances to the OOA.
    It would appear that there is the same factual dispute described below with many if not all of these
28  grievances, but these arguments need not be resolved here because these other grievances were
    filed after the operative complaint.

United States District Court
Northern District of California

1    him, in order to exhaust his administrative remedies." *Harvey v. Jordan*, 605 F.3d 681, 685 (9th

2    Cir. 2010). In *Harvey*, the inmate requested two alternate forms of relief: either a new disciplinary

3    hearing or that his disciplinary charges be dismissed. *Id.* At a lower level of administrative

4    review, prison officials granted him a new hearing. *Id.* The inmate was satisfied with that relief,

5    and therefore he did not further appeal the decision. *Id.* That the alternative form of relief he

6    requested was not granted did not matter because "[o]nce the prison officials purported to grant

7    relief with which he was satisfied, his exhaustion obligation ended." *Id.*

8         *Harvey* is readily distinguishable from this case because here there is no evidence

9    supporting an inference Plaintiff was satisfied by the OOG's decision partially redirecting and

10   partially "granting" grievance 205471. First, unlike the *Harvey* inmate, Plaintiff (at least

11   according to him) appealed to the next level of review (ECF No. 37 at 2-3), which he was

12   instructed to do if he was "dissatisfied" with the OOG's decision (*id.* at 13-14). Second, unlike in

13   *Harvey*, the lower-level administrative decision did not award Plaintiff any requested relief. In

14   fact, Plaintiff's grievance did not request any relief (*id.* at 15-16), and the OOG did not offer to

15   change any of the conditions he complained about (*id* at 13-14). Third, within two to three months

16   of the OOG decision, Plaintiff filed six more grievances about similar issues suggesting that the

17   problems had not been resolved. Those grievances, and indeed this lawsuit, compel the finding

18   that unlike the *Harvery* plaintiff, Plaintiff was not "satisfied" by the OOG decision.[7] In sum, there

19   is not sufficient evidence from which a reasonable fact-finder could find Plaintiff was satisfied

20   with the OOG decision such that he was not required to proceed to the OOA in order to exhaust

21   his claims within the meaning of the PLRA.

22        Plaintiff cites *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005), but that case is also

23   distinguishable. There, the court held: "The obligation to exhaust available remedies persists as

---

[7] In *Harvey*, the inmate filed one subsequent grievance five months after prison officials had
promised a hearing and not delivered it, and the court held neither that "reminder" grievance nor
his subsequent federal lawsuit meant the initial lower-level decision had not satisfied the inmate's
request in his grievance. 605 F.3d at 685. Here, however, the OOG did not promise and fail to
deliver Plaintiff relief he requested, so his subsequent grievances cannot reasonably be considered
"reminders" to prison officials to deliver promised relief.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

long as some remedy remains available.  Once that is no longer the case, then there are no remedies ... available, and the prisoner need not further pursue the grievance." *Id.*  In *Brown*, the lower-level decision granted the inmate's request for an investigation, but not his request for damages which were not available under the administrative grievance process.  *Id.* at 937-39.  As a result, the lower-level decision "did not counsel that any further review was available."  *Id.* at 937.  In addition, the lower-level decision categorized the grievance as a "staff complaint," which precluded granting any other form of relief, under prison regulations, than the investigation that had already been ordered.  *Id.* at 938-39.  Here, there is no evidence Plaintiff could not obtain relief from the OOA that the OOG had not provided, such as restoration of showers, exercise, laundry, toilet access, and/or food to the levels set forth in the regulations.  Furthermore, unlike in *Brown*, the lower-level decision specifically advised Plaintiff further review was available and how to obtain it.  Accordingly, *Brown* does not require excusing Plaintiff from appealing grievance 205741 to the OOA in order to exhaust his available administrative remedies.

Plaintiff also cites two district court decisions, neither of which is persuasive.  In *Bolton v. United States*, 347 F. Supp. 2d 1218, 1220  (N.D. Fla. 2004), the court held the plaintiff did not need to pursue higher levels of administrative review when he had received "all the relief" available to him under the applicable regulations from the lower-level administrative decision. Again, here, in contrast, there is no evidence the OOG provided Plaintiff all the relief he requested or that was available to him under the regulations.  In *Dixon v. Goord*, 224 F. Supp. 2d 739, 749 (S.D.N.Y. 2002), the court held grievances the inmate felt were "resolved" to his satisfaction did not need to be pursued to higher levels of administrative review.  For the reasons discussed above with respect to *Harvey*, the evidence is insufficient to support a finding Plaintiff's grievances were resolved to his satisfaction.

**B.     There is a Genuine Dispute as to Whether Plaintiff Exhausted**

While Plaintiff's argument that he was excused from appealing his grievance fails as a matter of law, there is a genuine dispute as to whether he did in fact appeal the grievance to the OOA, but the OOA never responded.  This dispute is material to the exhaustion question because a prison's failure to respond to a grievance renders the administrative grievance process

unavailable within the meaning of the PLRA and excuses the failure to pursue such a grievance to the highest level of administrative review.  *See Fordley v. Lizarraga*, 18 F.4th 344, 347, 358 (9th Cir. 2021) (administrative remedies unavailable when prisoner filed emergency grievance and received no response beyond acknowledgments that the grievance had been received and that first level review was in process).  An administrative remedy is also not available under the PLRA "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 US. 632, 644 (2016).

A rational trier of fact could believe the declarations of the OOA and OOG staff members, Mosely and Russell, that their database searches show no OOA appeal by Plaintiff of grievance 205471 (ECF Nos. 37 at 39; 34-1 at 6; 34-2 at 3), and find Plaintiff never appealed the OOG decision in grievance 205471 to the OOA.  Such a finding would mean Plaintiff did not exhaust all of his available administrative remedies before filing the operative complaint.  On the other hand, a rational trier of fact could also believe Plaintiff's sworn statement that he placed an appeal of grievance 205471 in an "indigent envelope" and gave it to PBSP officials to mail it to the OOA. (ECF No. 37 at 2-3.)  So finding, the rational fact-finder could further find: (1) the appeal never arrived at the OOA because PBSP officials thwarted his efforts by not mailing it, or (2) the OOA did in fact receive the appeal but did not timely acknowledge or respond to it.  Under *Ross* and *Fordley*, such findings would mean the OOA remedy would not have been an available administrative remedy within the meaning of the PLRA, and Plaintiff's failure to complete the OOA process would be excused.  As rational fact-finders could resolve this dispute in favor of or against Plaintiff, and yield a decision for or against finding his claims exhausted, there is a genuine dispute of material fact as to whether Plaintiff exhausted his available remedies with respect to grievance 205471.

Defendant argues the sworn statements of two other inmates that the OOA sometimes did not receive their appeals in indigent envelopes are inadmissible under Rule 602 of the Federal Rules of Evidence because these declarants lack personal knowledge of Plaintiff's mailing his appeal.  Defendant misunderstands the purpose of this evidence.  These inmates are not attesting to *Plaintiff's* mailing of his appeal, but rather to what happened when *they* sent mail to the OOA,

about which they do have personal knowledge.  Defendants also argue these statements are not relevant to Plaintiff's claims.  Again, the Court disagrees.  The statements are relevant to show that if other inmates have had trouble with the OOA acknowledging or receiving mail sent to it in indigenous envelopes, a rational fact-finder could draw the inference that it is more likely true that Plaintiff did send his appeal but the OOA did not receive it or did not acknowledge receiving it.

Defendant also argues the OOA's acknowledgment of receipt, on December 28, 2022,  of the appeal of one of Plaintiff's subsequent grievances (grievance 241790) (ECF No. 37 at 39) "clearly demonstrates" Plaintiff did not mail an appeal to the OOA in grievance 205471 because he does not have a similar acknowledgment of receipt for that appeal.  A rational fact-finder could find, however, the OOA received an appeal in grievance 205471, but simply neglected to send Plaintiff a similar acknowledgment of receipt, or the OOA never received the appeal in grievance 205471 because prison officials had refused to mail it to the OOA.  To accept Defendant's argument would improperly draw inferences in Defendant's favor.

*** 

Defendant is not entitled to summary judgment on exhaustion grounds because there remain genuine disputes of fact as to whether the OOA received but did not timely respond to Plaintiff's appeal of grievance 205471, or whether prison officials thwarted his efforts to send such appeal to the OOA, and the resolution of these disputes will determine whether Plaintiff exhausted his claims with grievance 205471.  When a motion for summary judgment for failure to exhaust is denied, disputed factual questions relevant to exhaustion should be decided by the judge.  *Albino*, 747 F.3d at 1170-71.  Prior to hearing summary judgment on the merits, or holding this hearing and referring Plaintiff for appointment of counsel,[8] however, the Court will refer this case to the Court's Prisoner Mediation for mediation proceedings. .

### CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment on exhaustion grounds is DENIED.

---

[8] As Plaintiff is incarcerated and not a trained lawyer, and the *Albino* hearing will raise complex legal issues, representation by counsel, if possible, will better serve the interests of justice.

United States District Court
Northern District of California

1         As summary judgment on exhaustion grounds has been denied, the Court finds good cause

2   to REFER this case to Magistrate Judge Illman pursuant to the Pro Se Prisoner Mediation

3   Program.  All further proceedings in this case are STAYED until further order, with the exception

4   of any proceedings related to the mediation.  The mediation proceedings shall take place within

5   120 days of the date this order is entered.  Magistrate Judge Illman shall coordinate a time and

6   date for a mediation proceeding with all interested parties or their representatives and, within five

7   days after the conclusion of the mediation proceedings, file a report.  All mediation proceedings

8   shall be confidential, and no statement made therein will be admissible in any proceedings in the

9   case, unless the parties otherwise agree.  No part of the mediation proceeding shall be reported, or

10   otherwise recorded, without the consent of the parties, except for any memorialization of a

11   settlement.

12         The Clerk shall send a copy of this order to Magistrate Judge Illman.

13         This Order disposes of Docket No. 34.

14         **IT IS SO ORDERED.**

15   Dated: September 21, 2023

16

17

18   JACQUELINE SCOTT CORLEY
United States District Judge

19

20

21

22

23

24

25

26

27

28